UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LEROY COLLINS, | Case No. 2:15-CV-1696 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| PATRICK HENDRIX, et al., | |
| Defendant(s). | |

Presently before the court is defendants Patrick Hendricks, Greg Cox, Dwight Neven, and Romeo Aranas' (collectively "defendants") motion for summary judgment. (ECF No. 84). Plaintiff Leroy Collins has not filed a response and the time to do so has passed. *See* (ECF No. 103).

**I.  Facts**

This is a prisoner civil rights case pursuant to 28 U.S.C. § 1983. *See* (ECF No. 19). Plaintiff, who is a prisoner in the custody of the High Desert State Prison ("HDSP"), proceeds *pro se* and *in forma pauperis*. (ECF Nos. 1, 19).

Plaintiff claimed that on December 1, 2014, Hendricks, who is a maintenance worker at HDSP, hit plaintiff with a half-ton motorized cart. (ECF Nos. 19, 84). Plaintiff alleges that the collision caused numerous physical injuries including back pain, neck pain, a bruised knee, a detached retina, and other internal damage. (ECF No. 19).

Shortly after the cart incident, plaintiff spoke with Lieutenant Ronald Oliver, who directed plaintiff to suspend his work assignment so that plaintiff could be evaluated by prison medical staff. (ECF Nos. 19, 84). On that same day, the prison medical staff prepared an unusual

**James C. Mahan**
**U.S. District Judge**

occurrence report showing that Collins did not suffer any lacerations, bruising, or limitations to his range of movement. (ECF No. 84-3).

On December 16, 2014, the department of corrections assigned Keith Jaquillard, a NDOC compliance investigator, to investigate the cart incident. (ECF Nos. 84, 84-5). Jaquillard's investigation was inconclusive as he was unable to determine "that Collins was struck by the maintenance cart as he stated." *Id.*

On January 3, 2015, plaintiff requested further medical treatment. (ECF No. 84-2). On May 10, 2015, Dr. Richard Wulff evaluated plaintiff and recommended that plaintiff receive magnetic resonance imaging ("MRI") on his left knee. *Id.* After plaintiff received the MRI, Dr. Wulff recommended that plaintiff receive surgery on his left knee. *Id.* On January 20, 2016, Dr. Wulff performed the surgery. *Id.*

Plaintiff also scheduled an appointment with an retinal specialist to evaluate the condition of his injured eye. *Id.* Sometime in 2016, Dr. Timothy Tweit performed surgery on plaintiff's eye. *Id.*

The remaining defendants in this action (Cox, Neven, and Aranas) performed various jobs at HDSP. Cox is the former director of the Nevada Department of Corrections. (ECF Nos. 19, 84). Neven is the former warden of HDSP. *Id.* Aranas was the medical director for the Nevada Department of Corrections at all times relevant to this lawsuit. *Id.* At no point did Cox, Neven, or Aranas personally treat plaintiff or review plaintiff's medical treatment request. (ECF Nos. 84-8, 84-9, 84-10). Aranas did, however, inform plaintiff at some point that the relevant medical staff had approved plaintiff's request to receive specialist care for his alleged injuries. (ECF No. 84-10).

On September 3, 2015, plaintiff initiated this action. (ECF No. 1). In his second amended complaint, plaintiff asserts two causes of action: (1) excessive force in violation of the Fourteenth Amendment against Hendricks and Neven; and (2) deliberate indifference in violation of the Eighth Amendment against Neven, Aranas, and Cox. (ECF No. 19).

Now, defendants move for summary judgment. (ECF No. 84).

**James C. Mahan**
**U.S. District Judge**

- 2 -

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

The court will enter judgment as a matter of law because defendants are entitled to qualified immunity, which shields them from liability.

Qualified immunity insulates public officials "'from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is broad, protecting "'all but the plainly incompetent or those who knowingly violate the law.'" *Lee v. Gregory*, 363 F.3d 931, 934 (9th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Determining whether a defendant is entitled to qualified immunity in a § 1983 action entails a two-part, conjunctive analysis exercised in the order the court deems appropriate. First, a court must consider whether the defendant's actions violated a constitutional right. *Conn v. City of Reno*,

572 F.3d 1047, 1062 (9th Cir. 2009). In making this inquiry, the court views facts in the light most favorable to the party asserting the injury. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Second, the court must determine whether the constitutional right was clearly established. *Conn*, 572 F.3d at 1062. A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 1062 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). In making this inquiry, the court should consider "the specific context of the case" and not "broad general proposition[s]." *Saucier*, 533 U.S. at 201. It is the plaintiff's burden to show the constitutional right was clearly established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Here, defendants are entitled to qualified immunity because they have not violated plaintiff's constitutional rights. The court hereby addresses each alleged constitutional violation in turn.

> i. *Excessive force*

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." [Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002)](). The core judicial inquiry is whether the officer applied force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, [503 U.S. 1, 6 (1992)]().

In determining whether an officer uses excessive force, courts consider the "extent of the injury suffered by an inmate . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, [503 U.S. at 7]() (citing *Whitley v. Albers*, [475 U.S. 312, 321]() (1986)).

The unopposed evidence before the court, which primarily consists of the compliance investigation report, shows that Hendricks was not aware that his cart made contact with plaintiff. The report summarizes Jaquillard's investigation, which included an interview with inmate John Steinchfield, who was a passenger in the cart. (ECF No. 84-5). Steinchfield told Jaquillard that the cart may have been moving too fast, but he did not see Hendricks hit any inmates. *Id*.

James C. Mahan
U.S. District Judge

Jaquillard also reviewed video footage, which showed the cart pass by plaintiff but did not clearly show that there was any collision. *Id*.

Moreover, plaintiff has not provided any evidence in support of his allegations other than making self-serving statements that Hendricks maliciously hit him with a motorized cart. (ECF No 84-2). These statements do not refute the investigation report and cannot preclude summary judgment. *Mendiola-Martinez c. Arpaio*, 836 F.3d 1239, 1260 (9th Cir. 2016) (holding that uncorroborated self-serving testimony cannot create a genuine dispute of fact and defeat summary judgment). Thus, because Hendricks was not aware that his cart hit plaintiff, Hendricks could not have acted with malice. Accordingly, the court will grant summary judgment on plaintiff's claim for excessive force.

### ii. Deliberate indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a claim for deliberate indifference, a plaintiff must establish: (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

The undisputed evidence shows that Neven and Cox did not have any involvement in plaintiff's medical care nor were they obligated to respond to plaintiff's treatment requests. *See* (ECF No. 84-8, 84-9). Aranas also did not personally participate in providing medical services to plaintiff, other than informing plaintiff that the Nevada Department of Corrections approved plaintiff's request to see orthopedic and retinal specialists. (ECF No. 84-10). Thus, Neven, Cox, and Aranas did not personally "deny, delay or intentionally interfere with medical treatment." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

If plaintiff has any plausible claim, it would necessarily be against the medical staff that was responsible for plaintiff's healthcare. But even if plaintiff were to succeed on such a claim, his deliberate indifference claims against Nevens, Cox, and Aranas would still fail because, under

42 U.S.C. § 1983, "supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989). Instead, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, had violated the constitution." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir.2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

Thus, due to the absence of any "individual actions" of indifference by the relevant defendants, the court will grant summary judgment of plaintiff's second cause of action. *Id*.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 103) be, and the same hereby is, GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED January 15, 2019.

_____
UNITED STATES DISTRICT JUDGE